UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 1:22-cr-103-LM-01 |
| v. ) | |
| ) | |
| MICHAEL CHICK ) | |
| ) | |

## INDICTMENT

The Grand Jury charges:

### Background

At all times relevant to this indictment:

1. Defendant **MICHAEL CHICK ("CHICK")** was a resident of Eliot, Maine. **CHICK** was employed as a school bus driver at Company A, a transportation company that provided school bus service in New Hampshire. One of **CHICK'S** duties was to drive a school bus servicing School A in Greenland, New Hampshire.

2. John Doe1 was a minor under the age of 18. John Doe1 was a resident of Greenland, New Hampshire, and attended School A.

3. Between approximately June 2020 and May 6, 2022, **CHICK** was John Doe1's school bus driver. Beginning on an unknown date and continuing over the course of several months, **CHICK** began to provide gifts such as candy and small toys to John Doe1.

4. Beginning in April 2022, John Doe1's parents began reporting **CHICK's** inappropriate attention to John Doe1 to school administrators.

5. In May 2022, John Doe1's parents reported **CHICK's** inappropriate attention to John Doe1 to the Greenland Police Department.

6. On or about May 5, 2022, Greenland Police Officers counseled **CHICK** about his

behavior towards John Doe1. Officers specifically directed **CHICK** to have no further contact with John Doe1 and his family.

7.	On or about May 6, 2022, Company A reassigned **CHICK** to a different bus route due to his inappropriate behavior towards John Doe1. Following his reassignment, however, **CHICK** persisted in his unauthorized contact with John Doe1, including summoning John Doe1 over to **CHICK's** bus on a near-daily basis.

8.	Beginning in or about May 2022, and continuing until approximately August 3, 2022, **CHICK** used various interactive computer services, electronic communications services and systems, and other facilities of interstate and foreign commerce, as part of a course of conduct intended to harass, intimidate, and place under surveillance with the intent to harass and intimidate, John Doe1. **CHICK's** continued course of conduct included, among other things, the following:

   a.	Beginning on an unknown date, **CHICK** told John Doe1 about an organization that would kidnap and torture John Doe1 and kill his family if John Doe1 failed to fulfill various demands.  For example, on or about May 13, 2022, **CHICK** advised John Doe1 that he had been paying the organization $1,000 per week to "hold them off."  On another occasion, **CHICK** showed John Doe1 a handwritten note that read, "I AM GOING TO RUN OUT OF MONEY.   $1,000 per week is what is keeping your family alive and together.   And I will run out of money." On another occasion, on or about June 1, 2022, **CHICK** placed a computer-generated note on his lap and directed John Doe1 to read it.  The note read, "YOU HAD TOO MANY CHANCES THIS IS NOT WORKING WE ARE DONE FUCKING AROUND MAKE THIS HAPPEN NOW OR THE KID DISAPPEARS."

   b.	As an illustration of the potential harm the organization posed to John Doe1,

**CHICK** described to John Doe1 photographs depicting children who had been badly hurt.

        c.     After his bus route reassignment, **CHICK** provided three cellular telephones to John Doe1 at various times. **CHICK** instructed John Doe1 how to use the telephones, how to charge the telephones, and how to contact him using the telephones. **CHICK** also instructed John Doe1 to keep the telephones a secret and further instructed John Doe1 to lie about where he obtained the telephones in the event they were discovered. **CHICK** instructed John Doe1 to call him using the telephones. **CHICK** also made phone calls and sent text messages to John Doe1 using the cellular telephones. One such text message, sent on or about June 2, 2022, read, "Gotta do it again bro." Another text message sent by **CHICK** to John Doe1 on or about June 8, 2022, read, "Clearly, you just aren't going to listen. So I think I might tell them to just go ahead and do it."

        d.     Forensic examination of **CHICK'S** phone reflected web history related to a spyware software that facilitates remote monitoring of electronic devices, including cell phones. **CHICK'S** phone received text messages consistent with the use of such software that alerted him to outgoing calls made by the cellular phones **CHICK** provided to John Doe1.

        e.     **CHICK** placed global positioning system (GPS) tracking devices on John Doe1's parents' vehicles and monitored the movement of their vehicles using software on his mobile phone. The GPS tracking devices used internal SIM cards to connect to the internet via a cellular data network. **CHICK** used information gleaned from this monitoring to intimidate and harass John Doe1. For example, on June 6, 2022, **CHICK** told John Doe1, "Yesterday, when your mom and dad were in Boston and you were at your grandmother's house, we were right across the street. [] and I'm doing everything I can to stop them from doing very bad things." **CHICK** then

reminded John Doe1 to "check in daily" with him and not to ignore **CHICK** when he summoned John Doe1 over to his bus.

    f.  Over several months, **CHICK** followed John Doe1 and his family as they traveled throughout Greenland, New Hampshire, and neighboring communities. On multiple occasions, **CHICK** took surreptitious photographs and videos of John Doe1 and his family as **CHICK** covertly followed them around to various public places, including retail stores and a water park.

    g.  **CHICK** traveled to John Doe1's home at night on numerous occasions and walked around the outside of the home while the family was inside.

### COUNT ONE
### Stalking of a Child Through
### Facilities of Interstate Commerce

9.  The Grand Jury re-alleges and incorporates by reference the allegations in paragraphs 1-8(g) of this Indictment.

10.  From in or around May 2022, through in or around August 2022, in the District of New Hampshire and elsewhere, the defendant,

**MICHAEL CHICK,**

with the intent to harass and intimidate, and place under surveillance with intent to harass and intimidate, John Doe1, a minor under the age of 18, used any interactive computer service, electronic communication service, electronic communication system of interstate commerce, and other facilities of interstate and foreign commerce, namely cellular telephones and the internet, to engage in a course of conduct, described above in paragraphs 8a-8g, that caused, attempted to

4

cause, and would reasonably be expected to cause substantial emotional distress to John Doe1 and John Doe1's immediate family members, all in violation of Title 18, United States Code, Sections 2261A(2)(B), 2261(b)(5), and 2261B(a).

Dated: September 6, 2022

TRUE BILL

/s/ Foreperson
Grand Jury Foreperson

JANE E. YOUNG
United States Attorney

/s/ Kasey A. Weiland
Kasey A. Weiland
Assistant U.S. Attorney